

U.S. Department of Justice

United States Attorney
District of Maryland

| | | | |
|---|---|---|---|
| *Coreen Mao*<br>*Assistant United States Attorney*<br>*Coreen.Mao@usdoj.gov* | *Mailing Address:*<br>*6500 Cherrywood Lane, Suite 200*<br>*Greenbelt, MD 20770-1249* | *Office Location:*<br>*6406 Ivy Lane, 8th Floor*<br>*Greenbelt, MD 20770-1249* | *DIRECT: 301-344-0112*<br>*MAIN: 301-344-4433*<br>*FAX: 301-344-4516* |

December 15, 2023

**VIA ECF**

The Honorable Deborah K. Chasanow
United States District Court for the District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

      Re:    *United States v. Joseph Farace*,
             Criminal No. DKC-21-294-2

Dear Judge Chasanow:

      I write regarding the sentencing of Joseph Farace, which is scheduled for December 20, 2023, at 10:30 a.m. This letter memorandum addresses the new "Zero-Point Offenders" Sentencing Guideline, which was not in effect at the time the Presentence Investigation Report ("PSR") was prepared, and the parties' agreement on its application to the jointly recommended sentencing range. This letter also addresses the Government's non-opposition for a downward variance on the basis of sentencing disparities with the defendant's co-defendant. This letter finally requests that the Court sentence the defendant to the low end of the revised range agreed to by the parties. The Government also requests that the Court impose 2 years of supervised release, as well as enter the Preliminary Order of Forfeiture, ECF No. 84-1.

## SENTENCING GUIDELINES

    Guidelines Pre-Application of U.S.S.G. § 4C1.1

      At the time the parties signed the plea agreement, ECF No. 79 ¶ 6, and the PSR was filed, ECF No. 83 ¶¶ 22-33, the defendant's offense level was agreed to be the following: a base offense level of 8, plus enhancements for the value of the laundered funds (+24, for value between $65 million and $150 million); for the defendant knowing that the laundered funds were the proceeds of the distribution of a controlled substance (+6); for the conviction being a money laundering conviction (+2); for the offense involving sophisticated laundering (+2); and for obstruction of justice, because the defendant knew the funds being laundered were the subject of a forfeiture order entered against the defendant's co-defendant in connection with a prior criminal case (+2). This resulted in an offense level of **44**. The defendant's prompt acceptance of responsibility reduces the offense level by three levels, leading to an offense level of **41**, prior to any variance.

Downward Variance

The plea agreement also states that the Government "will not oppose the Defendant's motion for a variance of up to 22 levels on the basis of sentencing disparities with the Defendant's co-defendant and son, Ryan Farace." ECF No. 79 ¶ 6(b)(v).

As the Stipulation of Facts describe, the defendant's son, Ryan Farace, who had previously been convicted and sentenced for running a years-long, large, sophisticated, drug-trafficking operation making and selling alprazolam (the generic form of the prescription drug Xanax) on the darknet, directed the defendant to transfer thousands of bitcoin to a third party. The defendant, knowing that his son was serving time in prison for that offense, and knowing that a money judgment had been entered requiring Ryan Farace to forfeit all drug proceeds and assets, including bitcoin, proceeded to effectuate the transfers, in several tranches, of the thousands of bitcoin. In doing so, the defendant placed the bitcoin — stipulated by the parties to be worth between $65 million and $150 million in drug proceeds — potentially out of the reach of law enforcement, and in violation of a lawful money judgment issued in the drug trafficking case.

The defendant's conduct, while extremely serious, was directed by his co-defendant and son. Indeed, Ryan Farace's plea agreement included a two-level enhancement for being the organizer of the offense. ECF No. 52 ¶ 6(f), see also ECF No. 65 ¶ 28 (Ryan Farace's PSR). Thus, as between co-defendants, Ryan Farace was the more culpable member. Ryan Farace's Guidelines was determined by reference to Guidelines for narcotics offenses, because he was responsible for the underlying crime. Applying those Guidelines, Ryan Farace's offense level, post-acceptance of responsibility, was 21. Therefore, as agreed to in the plea agreement, the Government does not oppose a 22-level downward variance in Joseph Farace's Guidelines calculation; *i.e.*, 41 levels minus a 22 level variance, for an offense level of **19**. An offense level of 19 reflects the defendant's culpability relative to his co-defendant.

Application of U.S.S.G. § 4C1.1

The new "Zero-Point Offenders" Sentencing Guideline, effective November 1, 2023, decreases a defendant's offense level by two levels if the defendant does not have any criminal history points, and meets the other criteria outlined in the Guideline. The PSR shows that the defendant has a criminal history score of zero. PSR ¶ 36. The Government agrees that the defendant meets the other criteria for eligibility and therefore, that U.S.S.G. § 4C1.1 applies to the defendant. Accordingly, the resulting offense level would be **17**.

Impact of U.S.S.G. § 4C1.1 on the Parties' Stipulated Sentencing Range

The plea agreement, which the parties entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), stipulates that a sentence of between 25 to 36 months of imprisonment is the appropriate disposition of the case. Plea Agreement ¶ 9. The range of 25-36 months included most of the Sentencing Guidelines range at a **19/I** (30-37 months), but at the low end of the range, was five months below the low end of the applicable range.

The parties have conferred and agree that, under the unique circumstances of application of the new Guideline and this case, it is appropriate to amend the parties' agreed-upon sentencing range based on an offense level of 17/I (24-30 months). Accordingly, applying the same methodology as before (*i.e.*, a range that, at the low end, is five months below the low end of the

applicable range), the parties agree that they will seek a sentence between **19 to 30 months'** imprisonment.

## 18 U.S.C. § 3553(a) ANALYSIS

The Section 3553(a) factors counsels a sentence at the low end of the parties' revised agreed-upon range. In reaching this recommendation, the Government considers in particular the following factors: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, and to afford adequate deterrence to criminal conduct; and the need to avoid unwarranted sentence disparities (here, among co-defendants).

### Nature and Circumstances of the Offense

The defendant effectuated a scheme to transfer thousands of bitcoin — nearly 2,875 bitcoin, which the parties stipulate was worth between $65 million and $150 million. (On the date of the seizure, February 10, 2021, the market value of one bitcoin was approximately $45,000, making the value of the nearly 2,875 bitcoin seized approximately $129 million). The defendant knew that the bitcoin were proceeds from unlawful activity, specifically, proceeds from his son's drug distribution, and that transferring the bitcoin to a third party would conceal or disguise the nature, ownership, or control of the illicit proceeds. Further, the proceeds were subject to a forfeiture order issued as part of the defendant's son's criminal sentence, for which the defendant's son was serving a sentence of imprisonment. Thus, by engaging in the criminal activity, the defendant not only engaged in a money laundering conspiracy, but also obstructed justice in seeking to place the illegal proceeds out of the reach of law enforcement and violate a lawful forfeiture order issued by a judge in this district.

While the defendant's son solicited and directed the defendant to make the transfers, the defendant nonetheless agreed to, and was critical to, the illegal enterprise. The defendant successfully made multiple transfers – initially a "test" bitcoin, followed by two tranches of approximately 1,372 bitcoin and 1,501 bitcoin. The defendants communicated using coded language, referring to the locations where the bitcoin was stored as "e-readers" or "books." The defendant also was specifically aware of the third party's involvement in the enterprise, and was informed by his son that the third party would soon be released to a halfway house, and that the third party would soon be contacting the defendant.

The defendant was critical to the success of the enterprise, as he was the only member who was not incarcerated at the time and could therefore freely access and conduct the transactions. His movement of millions of dollars in bitcoin, which he knew to be illegal drug proceeds, is extremely serious conduct.

### History and Characteristics of the Defendant

As described above and in the PSR, the defendant has no other criminal history. He committed the offense when he was 69, and the PSR describes some physical conditions, some of which is treated with over-the-counter medication or prescribed steroids. These characteristics are reflected in the parties' revised joint recommendation that the appropriate sentence is between 19 and 30 months' imprisonment, and the Government's recommendation to a sentence at the low end of the agreed-upon range. In addition, although the offense of conviction permits up to a

3-year term of supervised release, the Government follows the recommendation of Probation to a 2-year term of supervised release following a term of imprisonment.

### Need for the Sentence Imposed to Reflect the Seriousness of the Offense, and to Afford Adequate Deterrence to Criminal Conduct

There is a significant need for the sentence imposed to reflect the seriousness of the offense, and to afford adequate deterrence to criminal conduct. In committing the crime, the defendant sought to place millions of dollars' worth of drug proceeds out of the reach of law enforcement, and knew full well that his son was incarcerated for a significant drug distribution crime. The sentence should send a strong message of both specific and general deterrence to those who would seek to, or assist in, obstructing justice.

### Need for the Sentence Imposed to Avoid Unwarranted Sentence Disparities

As described above, the Government has assessed and accounted for the relative culpability of the defendants in the defendant's plea agreement and the parties' agreed-upon sentencing range. Ryan Farace received a sentence of 54 months' imprisonment in this case, in part based on his recidivism. *See* ECF Nos. 65 (Ryan Farace PSR), 74 (Ryan Farace Judgment). Although that criminal history makes Ryan Farace and the defendant differently situated, the agreed-upon sentencing range here is fairly lower than the sentence imposed in Ryan Farace's case. Also as described above, the Government has agreed to an adjustment in the parties' agreed-upon sentencing range to implement the new Zero-Point Offender Guideline. Therefore, the parties' revised agreed-upon sentencing range of 19-30 months in this case is appropriate and aligned with the consideration of sentencing among co-defendants.

## CONCLUSION

For the reasons set forth above, and any others that may be presented at the sentencing hearing, the Government submits that a sentence at the low end of the parties' revised agreed-upon sentencing range of 19-30 months, followed by a 2-year term of supervised release, is the appropriate sentence in this case.

Respectfully submitted,

/s/
Coreen Mao
Assistant United States Attorney

cc: USPO Paige Cameron (by email)